Matter of Ali (2024 NY Slip Op 00419)

Matter of Ali

2024 NY Slip Op 00419

Decided on January 31, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 31, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2021-07983

[*1]In the Matter of Shahid Ali, an attorney and counselor-at-law. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Shahid Ali, respondent. (Attorney Registration No. 4606158)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on November 19, 2008.

Diana Maxfield Kearse, Brooklyn, NY (Susan Korenberg of counsel), for petitioner.
Richard M. Maltz, PLLC, New York, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts
served the respondent with a notice of petition dated November 3, 2021, and a verified petition dated October 28, 2021, containing two charges of professional misconduct. The respondent served and filed a verified answer dated December 3, 2021, and an amended verified answer also dated December 3, 2021, admitting to some of the factual allegations contained in the verified petition but denying the conclusions of law contained therein. By decision and order on application dated February 17, 2022, this Court referred the matter to the Honorable Patricia M. DiMango, as Special Referee, to hear and report. A preliminary conference was held on March 17, 2022, and a hearing was conducted on March 29, 2022, and May 6, 2022. In a report dated August 10, 2022, the Special Referee sustained both charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent submits an affirmation and a memorandum of law to confirm in part and disaffirm in part the Special Referee's report. The respondent does not dispute that the charges should be sustained, but argues that the Special Referee made various findings that are not supported by the evidence.
The Petition
The respondent maintained an escrow account at Chase Bank with an account number ending in 5892 (hereinafter the subject escrow account). Charge one alleges that between June 8, 2018, and March 2, 2020, the subject escrow account had a rolling shortage of up to $80,000, and escrow checks disbursed from this account during this period cleared against other client funds. Therefore, the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge two alleges that the respondent failed to maintain required bookkeeping records for the subject escrow account by failing to maintain an accurate ledger or similar record showing the source of all funds deposited, the names of all persons for whom the funds were held, the description and amount of funds held, and the names of all persons to whom such funds were [*2]disbursed, in violation of rule 1.15(d) of the Rules of Professional Conduct.
The Hearing Record
Based upon the respondent's admissions, and the evidence adduced, we find the facts
are as follows:
The respondent opened his law firm with two other partners in or about 2009. In 2012, when the real estate market was doing well, the respondent shifted his practice to real estate, with about 75% of his practice representing corporate lenders and about 25% representing individual buyers and sellers. The respondent was the primary attorney handling the firm's real estate practice. Between 2009 to 2012, the respondent performed approximately 5 to 10 closings per month. In 2013, after the law firm was approved to represent Chase Bank, Wells Fargo, and Bank of America, the firm handled between 35 to 50 closings per month. In or about 2013, the amount of funds transacted in the subject escrow account was approximately $20 million per month. In 2020, the firm handled more than 100 closings per month, and by May 2022, the firm performed approximately 75 closings per month. In 2020, the amount of funds transacted in the subject escrow account was approximately $75 million a month.
The respondent's law firm had various escrow accounts. Initially, the firm maintained two escrow accounts with Chase Bank: one account for funds where the respondent and/or his firm represented the individual buyers/sellers in real estate transactions (hereinafter the individual client escrow account); and the other account for matters where the respondent represented the lender, which is the subject escrow account with account number ending in 5892. At one point, the firm also opened an escrow account with Signature Bank. The respondent testified that the firm's practice was to have a paralegal input into an electronic ledger the deposits made and checks issued from the escrow accounts. The firm retained the service of a bookkeeper who would come to the office once every one to three months to reconcile the escrow accounts. The respondent admitted that the "reconciliation" of the escrow accounts did not include comparing the information in the bank statements with the firm's ledger. Rather, the reconciliation merely sought to confirm that the checks issued on the date of the closing equaled the funds received for the transaction.
On or about April 30, 2018, the respondent represented Meadowbrook Financials in a loan transaction and issued a check for $100,000 to the borrower, DM (hereinafter the DM check). The check was not cashed until on or about June 8, 2018, at which point, Chase Bank made a mistake and debited $180,000 from the subject escrow account instead of $100,000. The respondent did not discover this error until approximately 20 months later, and approximately one year after the Grievance Committee had initiated a sua sponte investigation against the respondent for a dishonored check in an unrelated matter.
In May or June 2018, the bookkeeper stopped coming to the firm's office because her father passed away and she traveled to Pakistan. In August 2018, one of the respondent's partners was informed by Chase Bank that five checks totaling $600 were presented for payment from the subject escrow account, but there were insufficient funds in the account. These checks were initially dishonored but later processed and were never reported to the New York Lawyers' Fund for Client Protection (hereinafter the Lawyers' Fund). Upon learning of the insufficient funds, the respondent spoke with the bank manager and concluded that the bank had made a mistake because the manager told the respondent that it was a possibility. The respondent took no further action because he was waiting for the bookkeeper to return to reconcile the firm's escrow accounts. In September 2018, hearing no word from the bookkeeper, the respondent contacted the accounting firm that handled the firm's taxes to assist in "reconciling" the firm's escrow accounts. When a representative from the accounting firm arrived, he discovered that the computer containing the firm's ledger was not operable. The respondent contacted someone to fix the computer, and in October 2018, the respondent was informed that the computer could not be fixed and the data in the hard drive was not recoverable.
Thereafter, the respondent opened a new escrow account and began retrieving files from storage to recreate the firm's ledger and determine whose funds were in the escrow accounts. The respondent contacted three accounting firms to help recreate the firm's ledger, but received quotes for more than $100,000 and determined that the firm could not afford the expense. In late 2018 or early 2019, the respondent and his law partners decided to recreate the escrow account ledgers themselves. They started with the individual client escrow account because that account had fewer transactions and they thought it would be an easier task. The respondent and his partners chose to recreate the individual client escrow account first even though they never had a problem with that account and the five checks with insufficient funds were from the subject escrow account.
In February and March 2019, the respondent and his partners began depositing personal funds in aggregate of approximately $39,000 into the subject escrow account. At first, the [*3]respondent testified at his examination under oath that the members of the firm deposited personal funds in an "abundance of caution" and to prevent any "unfortunate situation" after the firm's computer crashed and being notified of the five checks being presented for payment with insufficient funds. When questioned further as to why they began depositing funds in February 2019 as opposed to January 2019, and after the five checks had been presented for payment with insufficient funds in August 2018, the respondent admitted that "in February of 2019 we transferred more money because the balance was probably very low and we didn't want anything to happen again." The respondent further admitted that on February 19, 2019, the balance in the subject escrow account was only $136.37.
In March 2019, the respondent was contacted by Chase Bank regarding a check in the amount of $15,946, dated October 31, 2018, which was to be dishonored due to insufficient funds. This check was issued from the subject escrow account after the firm's computer crashed. Upon notification of this dishonored check—approximately seven months after the firm was informed of the five checks with insufficient funds in August 2018—the respondent and his law partners began reconciling the subject escrow account.
The Grievance Committee was notified of the dishonored check for $15,946 and contacted the respondent for an explanation in April 2019. Initially, the respondent's firm inaccurately represented to the Grievance Committee that this check was dishonored because it was issued from the wrong escrow account, and that the funds were intact in another escrow account. In February 2020, after the respondent's firm had sufficiently reconciled the subject escrow account, it discovered the DM check mistake, which had resulted in the misappropriation of funds from multiple client matters.
In July 2020, the firm filed a petition to have unaccounted for funds in its escrow accounts totaling $136,422.47 deposited with the Lawyers' Fund. The firm abandoned this petition after they hired counsel who advised them that they "should actually take a harder road, recreate the whole account and at least make a good faith attempt" to determine whose funds they were holding. The $136,422.47 was the total sum of all the funds in the firm's escrow accounts, including approximately $20,000 to $22,000 that was in the firm's Signature Bank escrow account.
The Special Referee's Report
In a report dated August 10, 2022, the Special Referee sustained both charges. While
there was no evidence that the respondent's misconduct was motivated by personal or venal intent, the Special Referee found that the respondent's expression that he took responsibility of the misconduct to be "disingenuous" because he "repeatedly deflected his responsibilities by pointing a finger at others." The Special Referee found that the respondent blamed the 20 months of misappropriation of client funds on the bank error involving the DM check and blamed the part-time bookkeeper for abandoning the firm, claiming that it would have taken months, not years, to discover the escrow account deficiencies if she were present. Moreover, prior to the dishonored check in March 2019, the respondent had received "wake up calls" concerning the subject escrow account that he failed to heed, including a prior grievance investigation which resulted in a dismissal with advisement.
Findings and Conclusion
In view of the evidence adduced at the hearing and the admissions, we find that the Special Referee properly sustained both charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, the lack of evidence of venal intent, the respondent's pro bono work, the evidence of his positive character, and the remedial measures implemented to properly maintain the firm's escrow accounts. Notwithstanding the mitigation advanced, we find that the respondent failed to honor his obligations as a fiduciary, and ignored multiple warning signs alerting him to discrepancies in the firm's escrow account, which resulted in the misappropriation of fiduciary funds and an escrow account deficiency for an extended period.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of one year (see Matter of Taller, 152 AD3d 84).
LASALLE, P.J., DILLON, DUFFY, BARROS AND CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Shahid Ali, is suspended from the practice of law
for a period of one year, commencing March 1, 2024, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 2, 2024. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Shahid Ali, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Shahid Ali, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Acting Clerk of the Court